* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson, and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission hereby reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Industrial Commission has jurisdiction over the parties and subject matter in this case.
3. An employer-employee relationship existed between defendant-employer and plaintiff on September 27, 2000, the date on which plaintiff was involved in a shock incident while working for defendant-employer.
4. On the date of the incident, plaintiff's average weekly wage was $503.00, which results in a weekly compensation rate of $335.35.
5. The parties stipulated into evidence a Pre-trial Agreement and the following documents:
 a. Stipulated Exhibit 1, the parties' Pre-trial Agreement;
 b. Stipulated Exhibit 2, all Industrial Commission forms for this matter; and
 c. Stipulated Exhibit 3, Plaintiff's medical records.
 * * * * * * * * * * *
Based upon the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 47 years old at the time of the hearing before the Deputy Commissioner. Plaintiff attended high school through the 10th grade, and later obtained a GED. Plaintiff worked as a logger for approximately 27 years until he sustained a right knee injury in 1997. As a result of the knee injury, plaintiff began receiving social security disability benefits and *Page 3 
enrolled in an electrical degree program. He earned an associate electrical degree from Martin Community College in August 2000, and began working as an electrician for defendant-employer that same month.
2. On September 27, 2000, during the course and scope of plaintiff's employment with defendant-employer, plaintiff sustained an electric shock injury while working on an electric motor. Plaintiff testified that blue fire went up his arm to about his elbow, knocking him back about 12 to14 feet against a cement wall.
3. Following the electric shock injury, plaintiff was first seen by Dr. Thomas L. Speros of Washington Family Medicine Center. Dr. Speros admitted plaintiff into Beaufort County Hospital. Plaintiff complained of difficulty concentrating for a few minutes after the electric shock, and complained of confusion, chest pain, arm pain, and numbness.
4. Following plaintiff's release from the hospital, he continued to treat with Dr. Speros and his partner Dr. Edward F. Hill. During these visits, plaintiff continued to complain of numbness, tingling, and decreased sensation to pinprick in his hands. Dr. Speros was of the opinion, as set forth in his November 1, 2000 note, that plaintiff's nerve problems could take up to six months to improve or resolve.
5. During a return visit to Dr. Speros on February 28, 2001, plaintiff continued to report decreased sensation in his hands. At that time Dr. Speros felt that there was a small chance of improvement over the next six months; plaintiff's decreased sensation was not likely to change much.
6. Due to continuing pain and loss of sensation in his hands, plaintiff felt that he could no longer continue to work for defendant-employer and left his employment on March 9, 2001. *Page 4 
7. During a June 14, 2001 appointment with Dr. Hill, plaintiff continued to report persistent pain and paresthesias, or a feeling of pins and needles. Dr. Hill was of the opinion that plaintiff might benefit from a referral to a neurologist for anti-nerve medications.
8. On August 14, 2001, Plaintiff treated with Dr. J. Gregg Hardy, a neurologist with East Carolina Neurology. Plaintiff reported that he had sustained an electrical shock injury approximately nine months earlier. Plaintiff complained of diffuse aching in his extremities.
9. Plaintiff was seen by Dr. J. Michael Bramble, a clinical psychologist, on May 31, 2002. Dr. Bramble was of the opinion that plaintiff's medical and physical difficulties would significantly restrict his ability to function in a workplace. Dr. Bramble noted a decline in plaintiff's intellectual functioning with the greatest loss being in reasoning skills, short-term memory, and visual-motor speed. Dr. Bramble was of the opinion that if plaintiff were to attempt employment, any such employment would require accommodation for plaintiff's medical and physical difficulties, including plaintiff's intellectual limitations. Additionally, Dr. Bramble was of the opinion that such employment would need to provide flexibility and support by which plaintiff could access necessary mental health treatment.
10. On June 5, 2002, plaintiff began treatment with Dr. Raymund Millan, who practices in the area of physical medicine and rehabilitation. Plaintiff reported persistent numbness and pain in his extremities.
11. Due to financial pressures in providing for his family, plaintiff desired to return to some employment. On November 1, 2002, plaintiff began working as a heavy equipment log operator for Frankie Arrants Logging. Mr. Arrants, the owner, was a friend of plaintiff. During his employment with Frankie Arrants Logging, plaintiff continued to suffer from pain, decreased sensation, and tremors. He was slow in performing his work and needed the assistance of other *Page 5 
employees to complete his assigned tasks. But for his friendship with Mr. Arrants, it is unlikely plaintiff would have been able to maintain his employment for the logging company.
12. On January 7, 2003, Dr. Millan referred Plaintiff to Dr. William Albrecht, a pain psychologist, for evaluation. Dr. Millan felt that plaintiff may have been suffering from depression.
13. During 2003, plaintiff's condition worsened, particularly his pain and loss of sensation. By the end of September 2003, plaintiff felt that he could no longer continue his employment with Frankie Arrants Logging. Plaintiff left his employment with the logging company on September 30, 2003. Plaintiff testified that he has been unable to work in any employment since that date, continuing through the date of hearing before the Deputy Commissioner.
14. Plaintiff received treatment from Dr. Gloria Liu, who practices in the area of physical medicine and rehabilitation at UNC, on four occasions between May 6, 2003 and August 9, 2004.
15. Plaintiff also treated with Dr. Cynthia Lopez, a neurologist at Eastern Neurological Neuromuscular Center in Greenville, NC. Dr. Lopez first treated Plaintiff on May 16, 2005. Plaintiff reported that since the incident, he had experienced numbness and tingling in his arms and legs. Additionally, Plaintiff reported short term memory loss, progressive loss of balance, difficulty with bladder control, sexual dysfunction, and tremors.
16. Plaintiff continued to treat with Dr. Millan and on June 5, 2006, Plaintiff reported that he had been involved in an auto accident on March 23, 2006. Following the accident, an MRI was taken of Plaintiff's cervical spine, which showed abnormalities and possible disc injuries. Plaintiff reported new sensations at that time of an aching sensation in his neck and right arm with *Page 6 
symptoms down into his third and fourth digits on the right arm. Plaintiff also reported weakness in his right arm when compared to the left.
17. Plaintiff next treated with Dr. Millan on September 7, 2006, at which time Plaintiff was scheduled to undergo a cervical fusion related to the March 23, 2006 auto accident. Additionally, Dr. Millan's September 7, 2006 record noted that Plaintiff was "a status post right knee repair with removal of meniscus times four."
18. Plaintiff was referred by the carrier to James T. Smith, Psy.D., a licensed psychologist for the purpose of obtaining an opinion regarding the psychological factors contributing to, or arising from, plaintiff's chronic neuropathic pain secondary to an electrical shock injury. Dr. Smith was of the opinion that plaintiff suffered no psycopathology, and was also of the opinion that plaintiff's psychological problems were not somatic complaints or the result of malingering.
19. A review of the medical evidence in this matter shows that symptoms resulting from electric shock vary widely. Although Drs. Breuer, Hardy and Lopez did not support a causal connection between plaintiff's ongoing symptoms and the work-related, September 27, 2000 electric shock incident, the Full Commission finds that these physicians each had limited experience with treating patients with electric shock injury. Dr. Breuer testified that he had seen only about a dozen patients with electric shock injury over his entire 30-year career. Dr. Hardy testified that he does not even average one electric shock patient per month. Similarly, Dr. Lopez testified to seeing less than 5 to 10 electric shock patients per year. In comparison, Dr. Liu and Dr. Millan do support a causal connection between plaintiff's symptoms and the work-related injury, and each testified to seeing a larger number of electric shock patients in their practice. Dr. Liu testified to seeing 5 electric shock patients per month, and Dr. Millan stated that he was *Page 7 
treating 5 electric shock patients at the time of his deposition. Furthermore, the Full Commission finds that greater weight should be given to Drs. Liu and Millan, as plaintiff's treating physicians who treated plaintiff over a longer period of time. Dr. Hardy saw plaintiff just once, and Drs. Breuer and Lopez saw plaintiff only twice for evaluation, and not treatment. For these reasons, the Full Commission gives greater weight to the opinions of Dr. Liu and Dr. Millan on the issue of causation and finds that plaintiff's ongoing symptoms are causally related to his electric shock injury.
20. Dr. Millan opined and the Full Commission finds as fact that plaintiff suffers from chronic neuropathic pain with sensory impairment, which is related to the electric shock injury. Dr. Millan further opined and the Full Commission finds as fact that plaintiff is permanently and totally disabled from working in "his previous occupation or any other type of occupation"and that such disability is related to the electric shock injury. Dr. Millan's opinions are based upon his review of plaintiff's ability to function, including balance impairment, tremors, pain, sensation, and proprioception. Each of these conditions Dr. Millan related to the electric shock injury, and Dr. Millan testified that it was not unusual for these conditions to develop long after the electrical shock injury. Dr. Millan testified that it was his opinion that plaintiff will not have any more improvement with regard to his present condition. He further testified that plaintiff will need medication likely for the rest of his life, as well as ongoing medical treatment to monitor the medication.
21. Dr. Liu agreed with Dr. Millan's opinion that plaintiff suffered from chronic neuropathic pain with sensory impairment, which she also related to the electric shock injury. She also testified that plaintiff's physical limitations, sensory impairment, and pain were likely to be permanent. Dr. Liu felt that plaintiff's condition, including the pain and sensory damage that he *Page 8 
sustained, would affect plaintiff's ability to work. She was of the opinion that plaintiff would likely continue to need medication to treat his pain, depression, and anxiety.
22. Based upon the totality of the evidence of record, including the testimony and medical records of Drs. Liu and Millan, the Full Commission finds that plaintiff's ongoing chronic neuropathic pain with sensory impairment, and related conditions and symptoms, are causally related to the September 27, 2000 injury by accident in which plaintiff sustained an electric shock injury.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident in the course and scope of his employment on September 27, 2000, when he received an electric shock while working on an electric motor. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has shown through the production of medical evidence that he is physically, as a consequence of his work-related injury, incapable of work in any employment due to ongoing chronic neuropathic pain with sensory impairment, and related conditions and symptoms, which are causally related to the September 27, 2000 injury by accident.Russell v. Lowes Prod. Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454
(1993).
3. Plaintiff is entitled to receive temporary total disability compensation at the weekly rate of $335.35 for the periods of March 10, 2001, to October 31, 2002, and from October 1, 2003, through the present and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29. *Page 9 
4. Plaintiff is entitled to receive medical treatment for all conditions which are reasonably related to his electric shock injury for so long as such treatment is reasonly required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the weekly rate of $335.35 for the periods of March 10, 2001, to October 31, 2002, and from October 1, 2003, through the present and continuing until further order of the Commission, subject to the attorney's fee provided herein. The portion of such compensation that has accrued shall be paid in a lump sum.
2. Defendants shall pay for plaintiff's medical expenses incurred or to be incurred in the future which are reasonably related to his compensable injury according to procedures adopted by the Commission.
3. Defendants shall pay directly to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the indemnity compensation payable to plaintiff herein. Attorney fees that are based upon compensation that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, plaintiff's counsel shall receive every fourth check of indemnity compensation due to plaintiff.
4. Defendants shall pay the costs in this matter.
This ___ day of August 2008. *Page 10 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER DISSENTING: S/___________________ BUCK LATTIMORE
 COMMISSIONER *Page 11